RECEIPT # _5/355_
AMOUNT $ _150.00_
SUMMONS ISSUED _yes_
LOCAL RULE 4.1 _____
WAIVER FORM _____
MCF ISSUED _____
BY DPTY. CLK. _Kim Abaut_
DATE _10.30.03_

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.

|  |  |
|---|---|
| NORTHERN KARE FACILITIES/ KINGDOM KARE, LLC, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) ) |
| BENEFIRST, LLC, INTERMEDIARY INSURANCE SERVICES, INC., THE MEGA LIFE AND HEALTH INSURANCE COMPANY AND ATLANTIC ADMINISTRATORS INSURANCE AGENCY, INC. a/k/a BROKERAGE CONCEPTS ADMINSITRATORS INSURANCE AGENCY, INC., | ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) ) |

**03-12112 JLT**

MAGISTRATE JUDGE Collings

## COMPLAINT

In this action, the Plaintiff Northern Kare Facilities/Kingdom Kare, LLC asserts

claims against the Defendant Benefirst, LLC for declaratory judgment, breach of contract

and negligence, arising from Benefirst, LLC's failure to perform its contractual

obligations as the third party administrator of Northern Kare's self-funded employee

health care benefit plan.  In addition, Northern Kare asserts claims against Intermediary

Insurance Services, Inc., The MEGA Life and Health Insurance Company, and Atlantic

Administrators Insurance Agency, Inc. for declaratory judgment, breach of contract, and

violations of Mass. Gen. L. chs. 93A and 176D, due to the improper failure and refusal of

these Defendants to reimburse Northern Kare as required under the terms of a stop loss

policy of insurance for plan benefits incurred and paid by Northern Kare in connection with its self-funded employee health care benefit plan.

## PARTIES

1.      The Plaintiff, Northern Kare Facilities/Kingdom Kare, LLC ("Northern Kare") is a Vermont limited liability company with a principal place of business at 601B Red Village Road, Lyndonville, Caledonia County, Vermont 05851.

2.      The Defendant, Benefirst, LLC ("Benefirst"), is a Massachusetts limited liability company with a principal place of business at 1020 Plaint Street, Suite 220, Marshfield, Massachusetts 02050.

3.      Upon information and belief, the Defendant, Intermediary Insurance Services, Inc. ("Intermediary Insurance"), is a California corporation with a principal place of business at 180 Montgomery Street, 5th Floor, San Francisco, California 94104.

4.      Upon information and belief, the Defendant, The MEGA Life and Health Insurance Company ("MEGA Life"), is an Oklahoma corporation with a principal place of business at 9151 Grapevine Highway, North Richland Hills, Texas 76180.

5.      Upon information and belief, the Defendant, Atlantic Administrators Insurance Agency, Inc. a/k/a Brokerage Concepts Administrators Insurance Agency, Inc. ("Atlantic"), is a Massachusetts corporation with a principal place of business at 135 Beaver Street, Waltham, Massachusetts 02452.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because there is complete diversity of citizenship as between the

Plaintiff on the one hand and the Defendants on the other hand, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

7.    This Court has personal jurisdiction over the Defendants Benefirst and Atlantic, because each of these Defendants is organized under Massachusetts law and has a principal place of business in Massachusetts.

8.    This Court has personal jurisdiction over the Defendants Intermediary Insurance and Mega Life pursuant to Mass. Gen. L. ch. 223A, § 3, because each of these Defendants has (a) transacted business within this Commonwealth, (b) contracted to supply services or things in this Commonwealth; (c) caused tortious injury in this Commonwealth by an act or omission outside this Commonwealth, and regularly does or solicits business, or engages in a persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this Commonwealth; and or (d) contracted to insure persons, property and risks located within this Commonwealth at the time of contracting.

9.    Venue is proper pursuant to 28 U.S.C. § 1391(a) because the Defendants Benefirst and Atlantic may be found in this judicial district, and there is no district in which this action may otherwise be brought.

## FACTS

10.    On or about February 14, 2001, Northern Kare and Benefirst entered into an Administrative Services Agreement (the "Agreement"), pursuant to which Benefirst agreed to render third-party administrative services to Northern Kare under Northern Kare's self-funded employee group health care insurance plan (the "Benefit Plan"). In

3

return for Benefirst's administrative services, Northern Kare agreed to pay Benefirst a
fee. A true and accurate copy of the Agreement is attached hereto as <u>Exhibit A</u>.

11.     As the sponsor of the Benefit Plan (the "plan Sponsor"), Northern Kare
agreed to "pay [Benefirst] as set forth in th[e] Agreement" for administering the Benefit
Plan, and to "[p]rovide funds for the payment of plan benefits as set forth in th[e]
Agreement."

12.     As the administrator of the Benefit Plan (the "Plan Administrator"),
Benefirst agreed to (i) "[p]ay plan benefits in its usual and customary manner subject to
and in accordance with th[e] Agreement to or on behalf of persons entitled to receive plan
benefits"; (ii) [m]aintain, for the duration of th[e] Agreement and for two (2) years
thereafter, adequate records of all transactions between [Northern Kare], [Benefirst] and
plan participants";[1]. (iii) "[r]efer to [Northern Kare] for determination of: (a) any claim
or class of claims [Norther Kare] may specify, (b) any disputed claim, (c) any claim
involving any question of eligibility or entitlement of the claimant for coverage under the
Benefit Plan, (d) any question with respect to the amount of payment due, or (e) any other
question"; and (iv) [i]ndemnify [Northern Kare] and hold it harmless from and against all
claims, lawsuits, settlements, judgements [sic], costs, penalties and expenses, including
attorneys fees, with respect to this Agreement resulting from or arising out of the gross
negligence or the dishonest, fraudulent or criminal acts of [Benefirst] or its employees
acting alone or in collusion with others."

13.     With respect to funding the Benefit Plan, the parties agreed that Northern
Kare would establish and maintain a bank account (the "Account") to be used solely for

---

[1] The parties further agreed that such records would be the property of Northern Kare as to which Northern
Kare had the "right of continuing access".

the purpose of funding claims due under the Benefit Plan as well as expenses incurred under the Agreement.  The parties further agreed that Northern Kare would adequately fund the Account so that all claims could be paid within twenty-one (21) days of processing, and that Northern Kare would promptly reimburse participating Network health care providers within thirty (30) days from their receipt of the claim.  In accordance with the Agreement, Northern Kare expressly authorized Benefirst to issue on behalf of Northern Kare checks drawn from the Account for the purpose of making benefit payments under the Benefit Plan.

14.     As the Plan Administrator, Benefirst agreed to "use reasonable care and due diligence in the exercise of its powers in the performance of its duties under th[e] Agreement," and to adhere to certain performance standards establishing claims processing time and accuracy standards.

15.     Northern Kare and Benefirst further agreed that the Agreement could be terminated by either party at any time upon written notice.  In the event of termination, the parties agreed that such termination "will not terminate the rights or obligations of either party arising out of the period during which th[e] Agreement was in effect."

16.     Finally, Northern Kare and Benefirst agreed that their Agreement "shall be subject to and governed by the laws of the Commonwealth of Massachusetts.  Any and all proceedings relating to the subject matter thereof shall be maintained in the courts of the Commonwealth of Massachusetts of the Federal District Courts sitting in Massachusetts."

17.     Since Benefirst did not assume responsibility for insuring or underwriting the liability for medical stop loss under the Benefit Plan, Northern Kare contracted with

5

Intermediary Insurance to provide stop-loss coverage, which coverage was issued and underwritten by MEGA Life pursuant to an Accident and Sickness Excess Loss Insurance Policy, effective February 1, 2001 (the "Policy"). Under the Policy, Atlantic is identified as the "Claim Payer."

18.    With respect to Northern Kare's Pine/Union House facility, MEGA Life agreed under the Policy to reimburse Northern Kare for the amount of any "Plan Benefits"[2] which exceed a Specific Deductible of $15,000 on an individual covered under the Benefit Plan during the "Cost determination Period,"[3] or "Paid within the Policy Period" and "Claims incurred no more than 90 days prior thereto." Further, MEGA Life agreed to reimburse Northern Kare for the amount of any Plan Benefits which exceed the "Aggregate Attachment Point" of $129,384, less the amount, if any, payable under the Policy for Specific Loss Coverage, on claims "Paid in 12 months and Incurred not prior to 90 days and limited to $19,408." (Emphasis in original). Under the Policy, the lifetime limit of liability per covered person employed at Northern Kare's Pine/Union House facility under the Policy was $1,000,000.

19.    With respect to Northern Kare's Maple Lane facility, MEGA Life agreed under the Policy to reimburse Northern Kare for the amount of any "Plan Benefits" which exceed a Specific Deductible of $15,000 on an individual covered under the Benefit Plan during the "Cost determination Period," or "Incurred and Paid"[4] within the Policy Period (12/12)." Further, MEGA Life agreed to reimburse Northern Kare for the amount of any

---

[2] Under the Policy, the term "Plan Benefits" is defined as "amounts properly payable and paid under the [Benefit] Plan to a person covered under the [Benefit] Plan." For purposes of the Policy, Plan Benefits are deemed "paid" "on the date checks or drafts are issued and release for payment for Plan Benefits.
[3] The "Cost Determination Period" was from February 1, 2001 through January 31, 2002.
[4]  The phrase "Incurred and Paid" is defined as Plan Benefits which are "(1) Incurred by persons covered under the [Benefit] Plan; and (2) Paid by [Northern Kare]."

Plan Benefits which exceed the Aggregate Attachment Point of $90,088, less the amount, if any, payable under the Policy for Specific Loss Coverage, on claims "Incurred and Paid within the Policy period (12/12)." Under the Policy, the lifetime limit of liability per covered person employed at Northern Kare's Maple Lane facility under the Policy was $1,000,000.

20.    MEGA Life and Northern Kare agreed that reimbursements payable to Northern Kare for "any Specific Stop Loss provided under th[e] Policy will be made when [MEGA Life] receives all of the information it requires for payment of reimbursements (Proof of Loss). Proof of Loss must be satisfactory to [MEGA Life] and received by [MEGA Life] no later than 90 days after the date Plan benefits are Paid in excess of the Specific Deductible."

21.    MEGA Life and Northern Kare further agreed that reimbursements for "any Aggregate Stop Loss provided under th[e] Policy will be made after the end of the Cost Determination Period provided: (1) [MEGA Life] has received all of the information it requires (Proof of Loss); and (2) [MEGA Life] has completed any audit it may deem reasonable. Proof of Loss must be satisfactory to [MEGA Life] and received by [MEGA Life] no later than 90 days after the end of the Cost Determination period."

22.    As a result of Plan Benefits Incurred by certain Northern Kare Employees and Paid by Northern Kare, Northern Kare is entitled to be reimbursed under the Specific Stop Loss provisions of the Policy in the amount of $141,663.92.

23.    Although Northern Kare timely funded the aforementioned Plan Benefits and otherwise fulfilled its obligations under the Agreement and under the Policy, Intermediary Insurance, MEGA Life and or Atlantic have improperly and unfairly denied

7

coverage, and have failed and refused to reimburse Northern Kare in violation of the Policy.

24.     As a basis for denying coverage under the Policy, Intermediary Insurance, MEGA Life and or Atlantic have asserted in certain instances that the claims were untimely received from Benefirst in violation of Benefirst's obligations under the Agreement.

25.     Additionally, pursuant to the Policy, Northern Kare is entitled to reimbursement under the Aggregate Stop Loss provisions of the Policy in the approximate amount of $40,000.00. Intermediary Insurance, MEGA Life and or Atlantic have failed and refused to reimburse Northern Kare in violation of the Policy.

26.     Finally, Intermediary Insurance, MEGA Life and or Atlantic have failed and refused to pay $53,608.00 to various providers that are owed for their services, which amounts have not been paid by Northern Kare.

27.     Northern Kare has repeatedly demanded that Defendants Benefirst, Intermediary Insurance, MEGA Life and Atlantic reimburse Northern Kare and or pay the outstanding claims in fulfillment of their respective obligations under the Agreement and under the Policy, but the Defendants have failed and refused to do so.

## COUNT I
### (Declaratory Judgment – As to All Defendants)

28.     The Plaintiff realleges and incorporates herein by reference the allegations contained in paragraphs 1 through 27 of this complaint.

29.     As a result of the foregoing facts, there is an actual controversy between Northern Kare on the one hand, and Benefirst, Intermediary Insurance, MEGA Life and

Atlantic on the other hand, regarding the respective rights and obligations of the parties under Agreement and under the Policy.

30.    Pursuant to Mass. Gen. L. ch. 231A, §§ 1 and 2, Northern Kare seeks a declaratory judgment, declaring that the Defendants have breached their respective obligations under the Agreement and under the Policy and establishing Northern Kare's right to reimbursement from the Defendants.

## COUNT II
### (Breach of Contract – As to Benefirst)

31.    The Plaintiff realleges and incorporates herein by reference the allegations contained in paragraphs 1 through 30 of this complaint.

32.    To the extent that Benefirst failed to timely submit claims to Intermediary Insurance, MEGA Life and or Atlantic as alleged above, Benefirst breached its Agreement with Northern Kare to "use reasonable care and due diligence in the exercise of its powers in the performance of its duties under th[e] Agreement," and to adhere to certain performance standards establishing claims processing time and accuracy standards.

33.    As a result of Benefirst's breach of the Agreement, Northern Kare has suffered damages.

## COUNT III
### (Negligence – As to Benefirst)

34.    The Plaintiff realleges and incorporates herein by reference the allegations contained in paragraphs 1 through 33 of this complaint.

35.    Benefirst owed a duty of care to Northern Kare.

36.    Benefirst breached its duty of care to Northern Kare by failing to timely submit claims covered by Northern Kare's stop loss Policy.

37.     As a direct and proximate result of Benefirst's breach of its duty of care,
Northern Kare has suffered damages.

## COUNT IV
### (Breach of Contract – As to Intermediary Insurance, MEGA Life and Atlantic)

38.     The Plaintiff realleges and incorporates herein by reference the allegations
contained in paragraphs 1 through 37 of this complaint.

39.     As alleged above, Northern Kare is entitled to reimbursement from the
Defendants Intermediary Insurance, MEGA Life and or Atlantic under the Specific Stop
Loss provisions of the Policy in the amount $141,663.92, and under the Aggregate Stop
Loss provisions of the Policy in the approximate amount of $40,000.00.

40.     The failure and refusal of Intermediary Insurance, MEGA Life and or
Atlantic to reimburse Northern Kare in violation of the Policy constitutes a breach of
contract.

41.     As a result of the breach of contract by Intermediary Insurance, MEGA
Life and or Atlantic, Northern Kare has suffered damages.

## COUNT V
### (Unfair and Deceptive Trade/Settlement Practices
### As to Intermediary Insurance, MEGA Life and Atlantic)

42.     The Plaintiff realleges and incorporates herein by reference the allegations
contained in paragraphs 1 through 41 of this complaint.

43.     At all times relevant hereto, the Plaintiff and Defendants were engaged in
trade or commerce within the meaning of Mass. Gen. L. ch. 93A, § 11.

44.     The acts of the Defendants as aforesaid constitute unfair and deceptive
acts or practices within the meaning of, and proscribed by, Mass. Gen. L. ch. 93A, §§ 2
and 11, and Mass Gen. L. ch. 176D.

10

45.    The Defendants' use and employment of unfair or deceptive acts or practices was willful and knowing, and occurred primarily and substantially in Massachusetts.

46.    As a result of the Defendants' unfair and deceptive acts and practices and their willful and knowing violations of Mass. Gen. L. ch. 93A, §§ 2 and 11 and Mass. Gen. L. ch. 176D, the Plaintiff has suffered damages.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs pray that this Court:

1.    Adjudge and declare that Defendants have breached their respective obligations under the Agreement and under the Policy and establishing Northern Kare's right to reimbursement from the Defendants;

2.    Enter judgment against the Defendants for the damages incurred by Plaintiff as a result of the Defendants' breach of contract and negligence;

3.    Determine and declare the liability of the Defendants to the Plaintiff for violation of Mass. Gen. L. ch. 93A and 176D, and assess the damages that the Plaintiff has suffered and enter a judgment in favor of the Plaintiff in such amount, doubled or trebled, together with interest, cost and reasonable attorneys' fees; and

4    Order such other and further relief that this Court may deem proper, equitable and just.

PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.

NORTHERN KARE FACILITIES/
KINGDOM KARE, LLC

By its attorneys,

Matthew E. Mitchell, BBO #553071
Matthew P. Zayotti, BBO #638265
Keegan, Werlin & Pabian, LLP
265 Franklin Street
Boston, MA 02110-3113
(617) 951-1400

Dated: October 30, 2003

12

# ADMINISTRATIVE SERVICES AGREEMENT

By and Between

## NORTHERN KARE FACILITIES/KINGDOM KARE, LLC

And

## BENEFIRST, LLC.

This Agreement ("Agreement") between NORTHERN KARE FACILITIES/KINGDOM KARE, LLC ("Plan Sponsor") and BENEFIRST, LLC. ("Plan Administrator"), for the purpose of establishing the terms and conditions which the Plan Administrator agrees to provide administrative services to the Plan Sponsor under the Plan Sponsor's Benefit Plan ("Benefit Plan") in consideration for the payment by the Plan Sponsor of administration fees and the agreements set forth below:

## SECTION I.    CLAIMS ADMINISTRATION

A. The Plan Sponsor shall:

1. Retain the final authority and responsibility for the Benefit Plan and its operations. The Plan Sponsor gives the Plan Administrator the authority to act on behalf of the Plan Sponsor in connection with the Benefit Plan, but only expressly stated in this Agreement or as mutually agreed upon in writing by the Plan Sponsor and the Plan Administrator;

2. Pay the Plan Administrator as set forth in this Agreement;

3. Provide funds for the payment of plan benefits as set forth in this Agreement;

4. Furnish the information needed by the Plan Administrator to perform its functions under this Agreement. Information regarding the Benefit Plan includes any information concerning the eligibility and entitlement of persons to receive plan benefits;

5. Reimburse the Plan Administrator for the expense of any printed matter prepared especially for the Benefit Plan of the Plan Sponsor, except expenses specifically assumed by the Plan Administrator in the Schedule of Fees of Exhibit A;

6. Indemnify the Plan Administrator and hold it harmless from and against all loss, liability, damage, expense or other obligation resulting from or arising out of claims, demands or lawsuits against the Plan Administrator in connection with benefit payments or services performed under this Agreement; and,

7. Indemnify the Plan Administrator and hold it harmless against any liability, expenses, demand or other obligation resulting from or arising out of any tax or similar assessment (federal or state) which, (a) BeneFirst may incur with respect to plan benefits which are the obligation and liability of the Plan Sponsor, or (b) would have been levied on any charges or fees payable by the Plan Sponsor to the Plan Administrator under this Agreement.

B. The Plan Administrator, as Agent of the Plan Sponsor, shall:

1. Pay plan benefits in its usual and customary manner subject to and in accordance with this Agreement to or on behalf of persons entitled to receive plan benefits;

2. Notify any plan participant, whose request for plan benefits is denied, of the reasons for the denial, and of that plan participant's right to have the denial reviewed. The notification and review will be in a manner agreed upon by the Plan Sponsor and the Plan Administrator designed to satisfy the requirements of the Employee Retirement Income Security Act of 1974 (ERISA);

3. Maintain, for the duration of this Agreement and for two (2) years thereafter, adequate records of all transactions between Plan Sponsor, the Plan Administrator and plan participants. The records are the property of the Plan Sponsor. The Plan Sponsor has the right of continuing access to their records;

4. Refer to the Plan Sponsor for determination of: (a) any claim or class of claims the Plan Sponsor may specify, (b) any disputed claim, (c) any claim involving any question of eligibility or entitlement of the claimant for coverage under the Benefit Plan, (d) any question with respect to the amount of payment due, or, (e) any other question;

5. Provide the Plan Sponsor service and assistance in connection with the design and development of the Benefit Plan, initially and in connection with Benefit Plan revisions. Service and assistance includes; (a) underwriting and actuarial services, (b) estimates of initial plan costs, (c) cost projections of any proposed plan revisions, and (d) advice regarding the preparation of plan documents and summary plan description booklets;

6. Furnish the plan participants the items described in the following subsections:

   i.   an annual report of information available to the Plan Administrator which may be needed by the Plan Sponsor to satisfy plan requirements of ERISA.
   ii.  administrative forms including the initial supply of summary plan description booklets (but not any subsequent reprints) needed to facilitate the performance of BeneFirst's duties pursuant to this Agreement; and,

7. Indemnify the Plan Sponsor and hold it harmless from and against all claims, lawsuits, settlements, judgements, costs, penalties and expenses, including attorney fees, with respect to this Agreement resulting from or arising out of the gross negligence or the dishonest, fraudulent or criminal acts of the Plan Administrator or its employees, acting alone or in collusion with others.

## SECTION II.        PLAN FUNDING

A. The Plan Sponsor shall establish and maintain a bank account ("Account") to be used solely for the purpose of funding claims due under the Benefit Plan as well as expenses incurred under this Agreement.

B. The Plan Sponsor shall fund the Account on a timely basis with funds sufficient to cover all amounts to be paid when due under the Benefit Plan and this Agreement.

C. The Plan Sponsor shall expressly authorize the Plan Administrator to issue checks for benefit payments under the Benefit Plan on behalf of the Plan Sponsor.

D. The Plan Sponsor shall adequately fund the Account so that all claims can be paid within twenty-one (21) days of processing. In the event that the Plan Sponsor fails to adequately fund the Account within 21 days of claim processing, the Plan Administrator shall notify the Plan Sponsor by certified mail that the Plan Sponsor has fourteen (14) days to fund the Account. If the Plan Sponsor fails to adequately fund the Account within the 14 day period, the Plan Sponsor will be in breach of the Agreement and the Plan Administrator shall have the power to terminate administrative services. In the event of such termination, the Plan Sponsor shall promptly notify all covered employees and dependents of such termination, however, the Plan Administrator